In The District Court of The State of Oregon

Menphrey Douglas McGee,
          Plaintiff                      Case No: 2-24-CV-00254-AN

      V.

David Pedro, Liza Emory, B. Kubesh,      Request for leave to amend
and Tammi Clark

Plaintiff hereby requests leave to submit this amended complaint to articulate more clearly my claim. The defendants above named have established a pattern, practice and history of interfering with the treatment of individuals with mental illness, including myself, by implied threats of retaliation or termination which include disciplinary action for seeking mental health treatment. ① To be clear, a person who is incarcerated has the human right of mental health treatment, ② and not be shamed by placing stigma upon mental health treatment. Acting under color of law, all of the above named defendants signed contracts with the Department of Corrections Human Resources under 20.1.1, 20.1.2, and 20.1.3, promising help: ᴬ prepare offenders for reentry by developing pro-social life skills; ᴮ using evidence based practices and innovations in progressive technologies. This contract is D.O.C. policy agreed to by each above named defendant and signed upon being employed, by the State of Oregon, licensed by the Department of Public Safety Standards and Training, to act under color of law for the Department of Corrections. I then sought to be treated for my mental health as the unprofessional environment in

Page - 1 of 4 - Complaint

which I was working was degrading and I was beleaguered daily for arbitrary rules constantly and erratically elected to be enforced. The anxiety caused by the malfeasance become constant so I made an appointment at Mental Health Services. I was questioned by Ms. Clark about what my call-out was for. Ms. Clark has access to the network containing the necessary information at her desk so interrogation as to what my call-out is for or why is impractical. I knew my rights under HIPAA and PAIMI so I explained my condition with wrists was causing me issues and left it at that. My call-out stated "Health Services" so when I left to attend, I discovered it was with my Mental Health provider. After a discussion of my feelings, anxiety, frustration, physical ailments and my lack of ability to do much recreation due to being subject to long work hours and no yard time, my counselor put me on a lay-in. As a licensed professional, I deferred to her recommendation and followed her advice on mental practice. I went back to my unit and began meditation and reading. The next day I was fired from my position and given 2 misconducts stating the intent of seeking disciplinary action for not being specific about my sick-call appointment, claiming I withheld details being dishonest and that I only said I was having trouble with my wrists so I should have been in Medical, not "BHS" so I was also in an unauthorized area. I have heard Tammi Clark, in the presence of Tomisha Zakrezewski, Ass't Food Services Manager, Patrick Dill's, Food Services Clerk and Liza Emory, say that people who "go to BHS are pussies who are trying to get out of work." I have many other

Page - 2 of 4 - Complaint

witnesses as to other statements showing the practice of disparaging, not only myself, but all individuals suffering from mental illness. That type of environment does neither the protect nor advocate requirements of PAIMI of individuals acting under color of law ③ and violates the 8th and 14th Amendments of the United States Constitution. To also seek punishment through disciplinary action made all staff, not just prison security personell, but all staff who access the network, aware of my treatment for my wrists and mental health. Individuals who have stigma placed on mental health are less likely to seek treatment and staff who are not trained to understand, will most certainly have bias towards mentally ill individuals. ④ I have filed grievances and had my concerns dismissed even though I can prove I am suffering discrimination in the form of retaliation by officers Sauer and Davis since the incident occurred, and grievances filed. ⑤ David Pedro, being the Super-intendant of Eastern Oregon Correctional Facility, must show diligence in his zeal of providing competent and trained staff to work with the population of residents under his care. All complaints or grievances are instead ignored. No account is made of the fact that not every complaint is meritless. So there is no accountability so the system under Mr. Pedro's watch may grow, change and improve. Xera Zombie, Ashley Longhorn, Officers Jorge Morphin and Litzinger are but a few cases proving that under Mr. Pedro, things could get improved if he was held accountable. Mr. B. Kubesh has the duty to support his team in Mental Health Services and by his concession to the demands of Liza Emory

page - 3 of 4 - complaint

of the need for workers in her kitchen so he should interfere with treatment schedules and recommendations of licensed mental health providers. This shows all individuals have actively gone against the requirements of providing professional care ⑥ and have affected how care is provided to residents at EOCI. To ignore, dismiss my claim would be reminiscent of the "hands-off" doctorine in the 1960's, ⑦ as I humbly request the access to this court to show evidence, call witnesses for statements and litigate my issues in the presence of a jury. Thank you.

Respectfully: [signature]

April 16th - 2024

Menphrey Douglas McGee #18089266
Eastern Oregon Correctional Facility
2500 Westgate
Pendleton, OR 97801

## Supplemental Authorities

① American Correctional Ass'n, Standards For Adult Correctional Institutions, Standards 3-4368 through 3-4372 (4th ed. 2003 Supplement 2016); American Bar Association, Standards For Criminal Justice, Treatment of Prisoners, Section 23-6.11 (2010); National Commission on Correctional Health Care, Standards For Health Care Services in Prisons, Standard P-E-04 (2014) National Commn on Correctional Health Care, Standards For Health Services in Jails J-E-05 (2014); U.S. Dept. of Justice, Fed. Standards For Prisons and Jails §§ 5.29 to 5.30 (1980).

② Mental Health care is subject to the same constitutional standard as other forms of prison medical care: deliberate indifference to serious mental health needs violates the Eighth Amendment; Gates v. Cook, 376 F.3d 323, 343 (5th Cir 2004); Dolihite v. Maughon by and thru Videon, 74 F.3d 1027, 1042-43 (11th Cir 1996); Smith v. Jenkins, 919 F.2d 90, 92-93 (8th Cir. 1990); Langley v. Coughlin, 888 F.2d 252, 254 (2nd Cir. 1989)

③ - 42 U.S.C. §§ 10801-10851; Provides for the "protection and advocacy" systems designed to "(A) Protect and advocate the rights of individuals with Mental illness; and (B) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred."

④ - The "[C]asual, unjustified dissemination of confidential medical information to non-medical staff and other prisoners" is unconstitutional: Woods v. White, 689 F.Supp. at 877; See Ueland v. U.S., 291 F.3d at 999 (stating government could not "gratuitously reveal a prisoners medical information to third parties"); Casey v. Lewis, 834 F.Supp. 1477, 1546 (D. Ariz. 1993) (condemning sick call system that required inmates to discuss medical problems.)

⑤ - The First Amendment encompasses the political right to communicate, associate, and present grievances to the government; Dawson v. Delaware, 503 U.S. 159, 112 S.Ct. 1093, 1096, 117 L.Ed. 2d 309 (1992); National Ass'n For Advancement of Colored People v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460-61, 78 S.Ct. 1163, 2 L.Ed. 2d 1488 (1958).

## Supplemental Authorities (cont.)

⑤ cont. - The vast weight of authority stands for the proposition that it is unconstitutional to punish an inmate who exercises his First Amendment right to express a complaint: Dewalt v. Carter, 224 F.3d 607 (7th Cir. 2000). Direct proof is often difficult to obtain, Courts, however, have accepted circumstantial proof: Haynes v. Stephenson, 588 F.3d 1152 (8th Cir. 2009); Bennett v. Goord, 343 F.3d 133 (2d Cir. 2003)(allowing circumstantial evidence to prove a retaliatory motive). The best kind of circumstantial proof of retaliation is the timing of the adverse action against the inmate.

⑥ - Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff: Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). Sheer disorganization and dysfunction in a medical program can amount to deliberate indifference if it prevents prisoners from receiving necessary care: DeGidio v. Pung, 920 F.2d 525, 529 (8th Cir. 1990)(lack of "adequate organization and control in the administration of health services" supported finding of Eighth Amendment violation; Alexander v. Boyd, 876 F.Supp. 773, 789 (D.S.C. 1995)("Central to the issue of medical staffing is the necessity of a supervising physician to assure that the overall system is functioning properly to meet the health needs of the population").

⑦ - During most of the history of this country, there was some question as to whether prisoners had any constitutional rights at all. An oft quoted early decision characterized convicts as slaves of the states: Ruffin v. Commonwealth, 62 Va. 790, 1871 WL 4928 (1871). A respected Federal district judge characterized this view as "a bit like Justice Taney in 1856, who observed in Dred Scott v. Sanford that the Negro 'had no rights which the white man was bound to respect.'" Under the hands-off doctrine, Federal courts refused to intervene on the ground that "it is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver ~~them~~ from imprisonment those who are illegally confined." Stroud v. Swope, 187 F.2d 850, 851-52 (9th Cir. 1951)