IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MENPHREY DOUGLAS MCGEE,<br><br>        Plaintiff,<br>   v.<br><br>DAVID PEDRO, LIZA EMORY, B. KUBESH, and TAMMI CLARK,<br><br>        Defendants. | Case No.: 2:24-cv-00254-AN<br><br>OPINION AND ORDER |

        Plaintiff Menphrey Douglas McGee brings this action against defendants David Pedro ("Pedro"), B. Kubesh, Liza Emory, and Tammy Clark ("Clark"), alleging violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983. On August 20, 2024, defendants filed a Motion for Summary Judgment, ECF [21]. On September 9, 2024, plaintiff filed a Motion to Deny Summary Judgment, ECF [26], which the Court construes as a response to defendants' motion. On October 8, 2024, plaintiff filed a Motion for Default Judgment, ECF [28]. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons stated below, defendants' motion is GRANTED, and plaintiff's motion is DENIED.

## LEGAL STANDARDS

### A.    Default Judgment

        Under Federal Rule of Civil Procedure ("FRCP") 12(a)(1), a defendant must file a responsive pleading within twenty-one days of being served, or within sixty days if the defendant has timely waived service. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). However, a default judgment cannot be entered under FRCP 55(b) until a party has been defaulted under FRCP 55(a).

1

B.  **Summary Judgment**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases omitted). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255.

## BACKGROUND

A.  **Oregon Department of Corrections' Grievance System**

Under the grievance rules of the Oregon Department of Corrections ("ODOC"), an adult in custody ("AIC") may file a grievance on any grievable issue and pursue a grievance through two levels of

appeal. Defs. Mot. for Summ. J. ("Defs. Mot."), ECF [21], at 4. Grievable issues include the misapplication of any departmental policies, rules, or other directions, and unprofessional actions of employees. *Id.* (citing Or. Admin. R. 291-109-0210(3)(a)-(b)). An AIC may not grieve claims or issues that the AIC has pursued or is pursuing in pending litigation in state or federal courts. *Id.* (citing Or. Admin. R. 291-109-0210(4)(h)).

A grievance must be received by the institution grievance coordinator or designee within fourteen calendar days from the date of the incident or issue being grieved unless the AIC can satisfactorily demonstrate why the grievance could not be timely filed. *Id.* (citing Or. Admin. R. 291-109-0205(1)). When a grievance is accepted, ODOC staff provides an initial response to the AIC within thirty-five days unless further review is needed. *Id.* at 4-5 (citing Or. Admin. R. 291-109-0205(2)). When a grievance is denied for not complying with the rules, it is returned to the AIC with an explanation. *Id.* at 5. An AIC may elect to resubmit a grievance or grievance appeal that has been returned for correction for noncompliance with the rules so long as they do so within fourteen calendar days and no more than twice. *Id.* (citing Or. Admin. R. 291-109-0225(2)).

An AIC may appeal a grievance response in a two-level system of review. *Id.* (citation omitted). Initial appeals must be received by the institution grievance coordinator or designee within fourteen calendar days from the date that the initial grievance response was sent to the AIC, unless the AIC can satisfactorily demonstrate why the initial appeal could not be timely filed. *Id.* (citing Or. Admin. R. 291-109-0205(3)). A response to the initial appeal will be sent to the AIC within thirty-five calendar days unless further review is necessary. *Id.* (citing Or. Admin. R. 291-109-0205(4)). If an AIC is not satisfied with the response to their first-level grievance appeal, they may submit a second appeal within fourteen calendar days from the date the initial appeal response was sent to the AIC, unless the AIC can satisfactorily demonstrate why the final appeal could not be timely filed. *Id.* (citing Or. Admin. R. 291-109-0205(5)). The response to an AIC's second-level grievance appeal is final. *Id.* (citation omitted).

**B.     Plaintiff's Grievance**

Plaintiff is an AIC at Eastern Oregon Correctional Institution ("EOCI"). Defendants are ODOC employees. Plaintiff worked in the EOCI kitchen until he was removed from his job on January 3,

3

2024. Second Am. Compl. ("SAC"), ECF [10], at 3-4; Defs. Answer to Second Am. Compl. ("Answer"), ECF [15], ¶ 3. Plaintiff alleges that he was served a misconduct and removed from his job because he went to seek mental health treatment. SAC 3-4. Defendants allege that Clark issued the misconduct because plaintiff gave her false information: plaintiff told her he had an appointment with health services when his appointment was actually with behavioral health services. Answer ¶ 2.

Plaintiff has filed fourteen grievances since February 2022, including thirteen while at EOCI. Defs. Mot. 6 (citation omitted). The only grievance that pertains to plaintiff's claims in this action is EOCI_2024_01_015, which plaintiff signed on January 4, 2024. Id. at 7; Decl. Jason Villers Supp. Defs. Mot. for Summ. J. ("Villers Decl."), ECF [22], ¶ 34 & Ex. 10, at 36-38. The EOCI Grievance Office accepted the grievance on January 10, 2024. Defs. Mot. 7. In the grievance, plaintiff complained that Clark had previously made disparaging comments about AICs receiving mental health treatment, inquired into the nature of his call out and thereby improperly sought protected information about his mental health, and improperly punished him for accessing mental health services. Villers Decl. ¶ 34 & Ex. 10, at 36-38. On January 19, 2024, Clark responded to plaintiff's grievance, stating that plaintiff had told her that he had a medical callout regarding his hands hurting and becoming numb and had not mentioned behavioral health services. Id. ¶ 35 & Ex. 10, at 40. Clark stated that another staff member called medical when plaintiff did not return to his assignment and, at that time, "[plaintiff] had clearly demonstrated false information to staff." Id. at Ex. 10, at 40. On January 22, 2024, plaintiff filed a first-level grievance appeal, which the EOCI Grievance Office accepted on February 7, 2024. Id. at Ex. 10, at 41-42. Pedro responded to plaintiff's first-level grievance appeal on February 9, 2024, stating that there was "no evidence that [plaintiff was] publicly shamed for seeking any treatment." Id. ¶¶ 36-37 & Ex. 10, at 44. Pedro further stated that staff had only asked about the location of the callout for accountability purposes and investigated plaintiff's location after plaintiff did not return to work. Id. at Ex. 10, at 44. Plaintiff did not file a second-level grievance appeal or any discrimination complaints about any event related to his complaint. Id. ¶¶ 38-39.

Since plaintiff filed grievance EOCI_2024_01_015, he has been moved four times: on April 17, 2024, May 1, 2024, May 8, 2024, and May 31, 2024. Id. at Ex. 1.

4

### C. Procedural Background

Plaintiff initiated this action on February 7, 2024. On August 20, 2024, defendants moved for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies. On September 9, 2024, plaintiff filed a "motion to deny summary judgment," which the Court construes as a response to defendants' motion. On October 8, 2024, plaintiff moved for default judgment, alleging that defendants failed to respond to his claims.

## DISCUSSION

### A. Plaintiff's Motion for Default Judgment

As an initial matter, plaintiff fails to meet the procedural requirements for default judgment. To obtain a default judgment, default must first be entered against defendants, and plaintiff has not moved for an entry of default. Even if the Court construes plaintiff's motion as a motion for entry of default, plaintiff does not offer an affidavit or other competent testimony to support his request. *See* Fed. R. Civ. P. 55(a). Moreover, it is clear that defendants have defended against plaintiff's claims. Defendants timely filed an answer to plaintiff's second amended complaint on July 11, 2024, and filed the instant motion for summary judgment on August 20, 2024. ECF [15]; ECF [21]. Defendants have responded to plaintiff's allegations and addressed his claims against them. Accordingly, plaintiff's motion, whether construed as a motion for entry of default or a motion for default judgment, is improper.

### B. Defendants' Motion for Summary Judgment

Under the Prison Litigation Reform Act ("PLRA"), an AIC must exhaust all available remedies prior to filing a lawsuit with respect to prison conditions under section 1983 or any other federal law. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 531-32 (2002). Exhaustion requires compliance "with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 90-91 (2006). This includes pursuing a grievance through the highest level of appeal. *See Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002).

"[A] court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citation omitted). However, an AIC must only exhaust available remedies, *i.e.*, "grievance procedures that

5

are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Supreme Court has recognized three "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643 (citation omitted). Two of those circumstances are at issue here. A remedy is deemed unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[,]" *id.* (citing *Booth*, 532 U.S. at 736, 738), or (2) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" *id.* at 644. In such circumstances, exhaustion is not required. *Id.* at 643-44.

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007) (footnote omitted). The defendant has the initial "burden . . . to prove that there was an available administrative remedy, and that the [AIC] did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citation omitted). The burden then shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted).

It is undisputed that the ODOC grievance system was an available administrative remedy and that plaintiff failed to exhaust that remedy because he did not file a second-level grievance appeal. As such, plaintiff has the burden of establishing unavailability. Plaintiff argues that the ODOC grievance system was not available to him because (1) it operates as a simple dead end, and (2) he was thwarted from pursuing his grievance through both levels of appeal.

1.  *Operation as Dead End*

Plaintiff first argues that the ODOC grievance system operates as a simple dead end because "the administrators refuse to hold accountable the people who make even the most trivial of mistakes." Pl. Mot. Deny Summ. J. ("Pl. Resp."), ECF [26], at 5. Plaintiff's argument appears to be based on his belief that although Clark acted improperly in issuing him a misconduct, both Clark and Pedro still maintained that plaintiff had provided false information. Defendants argue that there is no evidence, nor

6

does plaintiff assert, that the grievance coordinator inhibited his ability to fully exhaust his administrative remedies.

An administrative procedure can operate as a dead end where a grievance coordinator has done something to inhibit an AIC's ability to fully exhaust their grievance, such as failing to timely act or failing to properly process their grievance, thus foreclosing an AIC's ability to pursue those grievances through all levels of appeal. *See, e.g.*, *Wallace v. Washington Cnty. Jail*, No. 3:18-cv-1975-SI, 2023 WL 4744740, at *12 (D. Or. July 25, 2023); *Kohler v. Or. Dep't of Corrs.*, No. 6:21-cv-01246-JR, 2022 WL 16856404, at *4 (D. Or. Sept. 9, 2022), *report and recommendation adopted*, 2022 WL 16855192 (D. Or. Nov. 10, 2022).

Here, nothing in the record supports plaintiff's contention that the ODOC grievance system operated as a dead end in this case. Plaintiff does not submit any evidence to support this argument, let alone evidence that would suggest that defendants were "unable or consistently unwilling to provide any relief" to an AIC seeking to appeal a grievance. *Ross*, 578 U.S. at 643 (citing *Booth*, 532 U.S. at 736, 738). The facts show that defendants timely responded to plaintiff's grievance and first-level appeal and that plaintiff did not file a second-level appeal. Because a second-level appeal "left open the possibility for some relief, the procedure did not operate as a 'dead end.'" *Wilson v. Zubiate*, 718 F. App'x 479, 481 (9th Cir. 2017) (quoting *Ross*, 578 U.S. at 643). Accordingly, plaintiff does not show a genuine dispute of material fact on this basis.

2. *Thwarting of Plaintiff's Pursuit of Grievance*

Second, plaintiff argues that he was thwarted from taking advantage of the grievance process because he was moved several times, told he would not be allowed to participate in many work programs because of his grievance against Clark, and treated "more aggressively" by correctional staff. Pl. Resp. 5. Defendants argue that there is no apparent nexus between plaintiff's change in housing assignments and his use of the grievance process and that plaintiff's vague allegations are insufficient to excuse the exhaustion requirement.

The threat of retaliation can render a prison grievance process effectively unavailable.

7

*McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

> "In order for a fear of retaliation to excuse the PLRA's exhaustion requirement, the [AIC] must show that (1) 'he actually believed prison officials would retaliate against him if he filed a grievance'; and (2) 'a reasonable [AIC] of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable [AIC] from filing a grievance.'"

*Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018) (quoting *McBride*, 807 F.3d at 987) (agreeing with district court's finding "that administrative remedies were effectively unavailable [where AICs] 'reasonably believed that they would suffer additional physical force if they complained'"). However, "general and unsubstantiated fears about possible retaliation" are insufficient. *Id.* at 794.

Here, nothing in the record supports plaintiff's allegations. As an initial matter, plaintiff did in fact use the grievance procedure by filing a grievance and a first-level appeal. Moreover, plaintiff alleges "only general and unsubstantiated fears about possible retaliation," without any specific facts to support those fears. *Id.* Although plaintiff has been moved four times since he filed the grievance, the first of those moves did not occur until more than three months after he filed the grievance and more than two months after he filed this lawsuit. There is no evidence of the reasons that correctional staff decided to move plaintiff, let alone evidence to suggest that correctional staff decided to move plaintiff because he filed grievances. Additionally, plaintiff does not provide any specific facts about the alleged incidents in which someone told him that he could not participate in work programs and some officers treated him more aggressively. Plaintiff does not indicate who made these statements or acted aggressively, when they did so, or whether the statements or actions were connected to plaintiff's use of the grievance process. Rather, plaintiff merely speculates that these incidents occurred because of his grievance against Clark or his seeking mental health treatment, without pointing to any evidentiary support in the record. Indeed, plaintiff acknowledges that it is unclear why some officers began to treat him more aggressively. *See* Pl. Resp. 5. Even if plaintiff subjectively believed that prison officials would retaliate against him if he filed a grievance, these allegations do not come close to showing that a reasonable AIC would have believed that such actions communicated such a threat. Accordingly, plaintiff fails to establish a genuine dispute of material fact on

this basis.

Because plaintiff failed to exhaust his administrative remedies and does not present any evidence to raise a genuine dispute that such remedies were effectively unavailable, summary judgment in defendants' favor is appropriate.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment, ECF [21], is GRANTED, and plaintiff's Motion to Deny Summary Judgment, ECF [26], and Motion for Default Judgment, ECF [28], are DENIED.

IT IS SO ORDERED.

DATED this 29th day of January, 2025.

_____
Adrienne Nelson
United States District Judge